Case 1:07-cv-03383-PAC    Document 10-2    Filed 06/07/2007    Page 1 of 10

Westlaw.

Not Reported in F.Supp.2d                                                                              Page 1
Not Reported in F.Supp.2d, 2000 WL 1234595 (S.D.N.Y.), 141 Lab.Cas. P 34,120
(Cite as: Not Reported in F.Supp.2d)

H
Lai v. Eastpoint Intern., Inc.
S.D.N.Y.,2000.

United States District Court, S.D. New York.
Oi Kwan LAI, Plaintiff,
v.
EASTPOINT INTERNATIONAL, INC., Eastpoint Intl, Inc., Couture Enterprises Limited, Choe Ltd., C.S. Choe, individually, Donna Karan International, Inc., the Donna Karan Store Corporation, d/b/a Dkny, and Control Reach Group, Ltd., Defendants.
No. 99 Civ.2095(DLC).

Aug. 31, 2000.

Michael Shen, Shneyer & Shen, P.C., New York, NY, for the plaintiff.
Steven M. Post, Phillips Nizer Benjamin Krim & Ballon LLP, New York, NY, for Donna Karan International, Inc. and the Donna Karan Store Corporation, d/b/a Dkny.

*OPINION and ORDER*
COTE, J.
\*1 In this action, plaintiff Oi Kwan Lai (" Lai" ) alleges, among other things, that the defendants retaliated against her in violation of federal and state labor laws for her filing of a Fair Labor Standards Act (" FLSA" ) complaint. The parties having completed discovery, defendants Donna Karan International, Inc. and The Donna Karan Store Corporation, d/b/a DKNY (collectively " DKI" ) now move for summary judgment dismissing the Amended Complaint. For the reasons discussed below, the motion is granted.

BACKGROUND

The following facts are undisputed unless otherwise noted.[FN1] Donna Karan International, Inc. is a publicly held corporation and a general partner in The Donna Karan Company, which in 1998 had approximately $625 million in net revenues resulting from the design, production, marketing, distribution and sale and/or licensing of women's, men's and children's apparel and accessories, shoes, and fragrance products for resale to the general public.[FN2] DKI's principal place of business is New York City.

FN1. Nearly all of the facts presented by DKI are undisputed for the following reasons. The plaintiff has failed to submit a 56.1 statement in opposition to the motion for summary judgment. Local Civil Rule 56.1(b) requires that the party opposing a motion for summary judgment include a " separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." " All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Local Civil Rule 56.1(c). The Court has, nonetheless, considered allegations in the plaintiff's memorandum of law where such allegations are followed by citation to evidence. Nonetheless, for the most part, the evidence submitted by the plaintiff provides no basis upon which the plaintiff may dispute the majority of DKI's assertions.

FN2. Unless otherwise noted, all facts relate to the period of time between 1998 and the first three months of 1999.

Defendant C.S. Choe (" Ms.Choe" ) owned and operated defendants Eastpoint International, Inc. (" Eastpoint Int'l" ), Couture Enterprises, Ltd. (" Couture" ), and Choe Ltd. (" Choe" ) (collectively " Eastpoint" ) at a single premises located at 330 West 38th Street. All three entities performed similar work and work was assigned to employees without regard to which entity's payroll they were on or to which entity the work order had been sent. DKI's women's apparel business primarily consists of three lines: DKNY, Collection and Signature. DKI used the services of Eastpoint for the assembly and pressing of garments for the Collection and Signature lines.

In 1998, DKI had $468 million in cost of sales and did approximately $1.6 million in business with Eastpoint, or less than 1% of DKI's overall garment production. Eastpoint's relationship with DKI was nonexclusive; Eastpoint also performed production

Case 1:07-cv-03383-PAC    Document 10-2    Filed 06/07/2007    Page 2 of 10

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2000 WL 1234595 (S.D.N.Y.), 141 Lab.Cas. P 34,120
(Cite as: Not Reported in F.Supp.2d)

work for other entities. The factory, premises, equipment, machinery, and supplies other than fabric and trimmings necessary to Eastpoint's operations were owned, maintained and/or supplied by Eastpoint.

DKI employed two field quality control inspectors whose responsibilities included making brief visits to DKI's contractors, including Eastpoint, to inspect the quality and appearance of finished garments prior to delivery to DKI. During their visits to Eastpoint, these quality control inspectors spoke only to Ms. Choe or Eastpoint supervisors regarding garment quality issues. They did not speak with Eastpoint employees nor did they instruct any Eastpoint workers on how to perform their job duties.

Eastpoint had a collective bargaining agreement with Local 89-22-1, UNITE (the " Union" ) that set forth the terms and conditions of employment of Eastpoint's employees. DKI is not a party to that agreement. DKI played no role and had no control over any employment decisions regarding Eastpoint's employees or any aspect of their terms and conditions of employment; DKI had no power to hire, fire, lay off or recall Eastpoint's employees; did not supervise or control work schedules or conditions of employment; did not determine pay rates or method of payment; and did not maintain employment records. As stated by Ms. Choe, " all hiring and firing was my sole responsibility. No employee of [DKI] had any say in who worked for [Eastpoint]." No employee of Eastpoint ever became an employee of DKI and no employee of DKI was ever employed by Eastpoint.

*2 Lai was interviewed and hired by Eastpoint in 1992 as a sewing machine operator. Eastpoint paid Lai's wages and at various times, Lai was on the payroll of each of the three Eastpoint employers. Eastpoint set Lai's rate of pay and, throughout her employment, determined her periodic raises, the manner and timing of her pay, her assignment of work, the days and hours of her work, break times and discipline. Lai did not work for Eastpoint from November 1997 to November 1998.

In early 1998, Lai filed a complaint for nonpayment of overtime against Eastpoint with the New York Department of Labor (" NYDOL" ). Lai did not claim that DKI was her employer or owed her overtime pay, nor did the NYDOL seek any records from DKI or inform DKI of its investigation or findings. All of Lai's employment records upon which NYDOL relied were obtained from Eastpoint and Lai.

In August 1998, Lai, who had been laid off by Eastpoint in November 1997, brought a grievance against Eastpoint under the collective bargaining agreement, alleging that Eastpoint had improperly failed to recall her to work. The Union arbitrated the grievance on Lai's behalf. Neither Lai nor the Union sought to make DKI a party to the proceeding nor was DKI aware of the proceeding or the arbitration award. No reference was made to DKI during the proceeding or in the arbitrator's award issued in October 1998.

On August 27, 1998, Lai filed suit in this Court against Eastpoint and DKI, alleging, *inter alia,* that Eastpoint had failed to pay her overtime wages, in violation of the FLSA and New York Labor Law (" NYLL" ). *See Lai v. Eastpoint International, Inc.,* 98 Civ. 6107(KMW). In October 1998, DKI's Vice President of Production Frank Decolator (" Decolator" ) received a directive to be careful about entering into contractor agreements with Eastpoint until the lawsuit had been resolved and until Eastpoint complied with all labor laws. DKI continued, however, to issue contracts to Eastpoint and in October, November and December 1998, issued contracts to Choe and Couture in approximately equal numbers. On December 22, 1998, before engaging in discovery, the parties stipulated to a dismissal of the suit.

In early November 1998, Lai was recalled to work by Eastpoint. According to Lai, Ms. Choe instructed Lai's coworkers not to speak with Lai and reduced Lai's hours. On December 9, Lai, along with some other workers, was laid off; she was rehired on December 20. In December 1998, Choe ceased doing business when no work was available from DKI. On December 30, Eastpoint laid off a number of workers, including Lai. In January, some workers who had been laid off when Choe closed were recalled to work for Couture. Lai was not recalled back to work by Eastpoint. Lai does not assert that she was the only employee not recalled. Lai also does not allege that DKI knew that she had been laid off, that she had not been recalled, or which of the Eastpoint entities was paying her at any time.

*3 In March 1999, Ms. Choe advised DKI that she was closing Eastpoint. DKI was unaware of Ms. Choe's plans prior to her notifying DKI of the closure. DKI ceased its business dealings with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03383-PAC    Document 10-2    Filed 06/07/2007    Page 3 of 10

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2000 WL 1234595 (S.D.N.Y.), 141 Lab.Cas. P 34,120
**(Cite as: Not Reported in F.Supp.2d)**

Eastpoint as a result of Eastpoint's closure at some point in March 1999.

Lai commenced this action on March 19, 1999, and filed an Amended Complaint on April 12, 1999, alleging that she was retaliated against in violation of Section 215(a)(3) of the FLSA and Section 215 of the NYLL. She also alleged that DKI was negligent in its supervision and hiring of Eastpoint.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment may not be granted unless the submissions of the parties taken together " show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the nonmovant's claims cannot be sustained, the opposing party must " set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the " mere allegations or denials" of his pleadings. Rule 56(e), Fed.R.Civ.P.; *see also Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). In deciding whether to grant summary judgment, therefore, this Court must determine (1) whether a genuine factual dispute exists based on the evidence in the record, and (2) whether the fact in dispute is material based on the substantive law at issue.

### B. Retaliation

Section 215(a)(3) of the FLSA prohibits " any person" from discharging or in any other manner discriminating against " any employee" who files a complaint or institutes a proceeding under or related to the FLSA. 29 U.S.C. § 215(a)(3); *see also* NYLL § 215 (" [N]o employer ... shall discharge, penalize, or in any other manner discriminate against any employee because such employee has caused to be instituted a proceeding under [its provisions]." ).[FN3]

> FN3. The parties do not dispute that there is no substantive difference between the FLSA and the NYLL retaliation provisions and neither party cites any New York cases, apparently assuming that a violation of the antiretaliation provisions of the FLSA is also a violation of the parallel provisions of the NYLL. Given the parties' apparent concession that the plaintiff's state law claim is governed by the same standards as those applicable to her FLSA claim, along with the fact that the provisions are nearly identical, the Court will consider exclusively federal law in resolving the question whether Lai has offered evidence to create a genuine issue of material fact as to her claims under the FLSA and the NYLL.

Courts analyzing retaliation claims under the FLSA apply the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1972). *See Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 876 (2d Cir.1988). Thus, a plaintiff alleging retaliation under these statutes must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Cruz v. Coach,* 202 F.3d 560, 566 (2d Cir.2000). " The term ' protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Id.* A causal connection may be established either " indirectly by showing that the protected activity was closely followed in time by the adverse action," *Manoharan v. Columbia Univ. College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir.1988), or " ' through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant," ' *Johnson v.. Palma,* 931 F.2d 203, 207 (2d Cir.1991) (quoting *DeCintio v. Westchester County Medical Ctr.,* 821 F.2d 111, 115 (2d Cir.1987)) (emphasis in original).

*4 Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a " legitimate, non-discriminatory reason for the employment action." *Weinstock v.. Columbia Univ.,-F.3d-,* No. 99-7979, 2000 WL 1200161, at *6 (2d Cir. Aug. 23, 2000). Should the defendant meet this burden, the plaintiff must produce evidence that the reasons the defendant advanced were pretextual; more specifically, the plaintiff must produce " sufficient evidence to support a rational finding that

Case 1:07-cv-03383-PAC    Document 10-2    Filed 06/07/2007    Page 4 of 10

Not Reported in F.Supp.2d                                                                                                           Page 4
Not Reported in F.Supp.2d, 2000 WL 1234595 (S.D.N.Y.), 141 Lab.Cas. P 34,120
**(Cite as: Not Reported in F.Supp.2d)**

the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock,*-F.3d at-, 2000 WL 1200161, at * 6 (quotation omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 120 S.Ct. 2097, 2106 (2000). When alleging disparate treatment, a plaintiff must show that the protected trait-for a retaliation claim, the plaintiff's having participated in protected activity-" actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Reeves,* 120 S.Ct. at 2105 (internal quotation omitted).

In her amended complaint, Lai alleges that Eastpoint committed various retaliatory acts against her, including " threats, humiliation directed towards plaintiff and alienating plaintiff from her coworkers; unjustly laying off plaintiff for periods of time when work was available and by orchestrating a closure of the Choe Ltd. portion of the business to illegally terminate plaintiff from her job." The complaint does not allege that DKI was in any way involved in the retaliatory conduct, but instead alleges that DKI " knew or should have known that plaintiff was fired by defendant [Eastpoint] in violation of the FLSA." Lai does not now dispute, and has indeed conceded, that DKI did not have knowledge of the alleged acts of retaliation. In opposition to this motion, rather than pursuing the theory of her complaint as described above, plaintiff asserts for the first time the theory that DKI retaliated against her by manipulating contractors' agreements and orders so as to close Choe, the legal entity that was paying Lai at the time she was laid off, thereby terminating Lai.[FN4]

> FN4. Because plaintiff makes no argument in opposition to this motion based on the theory of her complaint, the Court deems that theory abandoned.

Relying on this Court's decision in *Lopez v. Silverman,* 14 F.Supp.2d 405 (S.D.N.Y.1998), a FLSA case involving the nonpayment of wages, plaintiff argues that although not her direct employer, DKI is liable to Lai under the FLSA as a " joint employer." As discussed below, even assuming that DKI is a joint employer of Lai, Lai has not established a prima facie case of retaliation against DKI.[FN5] It is therefore not necessary to reach the issue of DKI's status as a joint employer.

> FN5. *Lopez* does not stand for the proposition, as the plaintiff sometimes appears to assume, that a finding of joint employer status is alone a sufficient basis for liability under the FLSA. Joint employer status is merely a predicate for liability; a plaintiff must still establish all elements of her claim for liability to attach to the joint employer. *See, e.g., Herman v. R.S.R. Security Servs., Ltd.,* 172 F.3d 132, 141-42 (2d Cir.1999) (after affirming finding of joint employer status, addressing elements of claim).

Lai has failed to offer evidence supporting even a prima facie claim of retaliation. The adverse employment actions suffered by Lai were Eastpoint's termination of her employment in December and its failure to recall her in January. Lai does not dispute that Ms. Choe alone made these decisions, as she made all hiring and firing decisions, without any input or knowledge by DKI.[FN6] Lai's theory-that DKI intentionally retaliated against her by ceasing to do business with one of the Eastpoint entities, Choe, thus causing Lai's termination-is not only wholly unsupported, but also contradicted by the evidence, as discussed below. There is no evidence of a causal connection between any action taken by DKI that may have adversely affected Lai and Lai's protected activity in filing a FLSA complaint.

> FN6. The parties do not dispute that Lai's filing of a complaint alleging violations of the FLSA and the NYLL constituted protected activity.

*5 Although Lai claims that she suffered intentional disparate treatment as a result of her protected activities, she concedes that she was one of *fifteen* employees who were laid off by Eastpoint and that thereafter some, but not all, of those workers were recalled by Eastpoint. Lai does not allege that the other workers who were not recalled were engaged in protected activities similar to her own. Moreover, as Lai's own evidence shows, Eastpoint assigned work to employees without regard to what entity was paying the employees at the time. Throughout her own employment, Lai was paid by each of the three employers at various times. Lai does not allege that DKI had any knowledge of the circumstances of her employment, including which of the three entities employed her at any given time. Without evidence of such knowledge, Lai's theory that DKI manipulated its assignment of orders among the three Eastpoint entities to cause Lai's termination is untenable. While there is no evidence that DKI did manipulate its

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03383-PAC   Document 10-2   Filed 06/07/2007   Page 5 of 10

Not Reported in F.Supp.2d                                                                Page 5
Not Reported in F.Supp.2d, 2000 WL 1234595 (S.D.N.Y.), 141 Lab.Cas. P 34,120
**(Cite as: Not Reported in F.Supp.2d)**

placement of orders, whether or not DKI ceased issuing orders to Choe at any time is not material, since DKI continued doing business with other Eastpoint entities until March 1999, approximately four months *after* Lai was laid off. Furthermore, Lai does not allege that DKI could have influenced in any way Eastpoint's decision as to what workers were recalled in January. Finally, the undisputed evidence shows that when DKI did cease doing business with Eastpoint in March 1999, its decision was based on Ms. Choe's notification to DKI that she was closing the Eastpoint factory. In sum, Lai has offered no evidence that DKI took any adverse action against her in retaliation for her filing of a complaint alleging violations of the FLSA and the NYLL, and her retaliation claims against DKI must therefore be dismissed.

### C. Negligent Hiring and Supervision

DKI has moved for summary judgment dismissing plaintiff's claims of negligent hiring and supervision. Plaintiff has not opposed this aspect of the motion. Accordingly, these claims are dismissed.

### CONCLUSION

For the reasons stated, the motion of defendants Donna Karan International, Inc. and The Donna Karan Store Corporation, d/b/a DKNY, is granted.
SO ORDERED:

S.D.N.Y.,2000.
Lai v. Eastpoint Intern., Inc.
Not Reported in F.Supp.2d, 2000 WL 1234595 (S.D.N.Y.), 141 Lab.Cas. P 34,120

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2000 WL 343772 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

H
Amaker v. Haponik
S.D.N.Y.,2000.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Anthony D. AMAKER, Plaintiff,
v.
Gayle HAPONIK, et al., Defendants.
No. 98 CIV. 2663.

March 31, 2000.

Anthony D. Amaker, pro se, Clinton Correctional Facility, Dannemora.
Stacy Robin Sabatini, AAG, State of New York, Office of the Attorney General, New York.

OPINION AND ORDER
KOELTL, District J.
*1 The plaintiff, Anthony Amaker (" Amaker" ), now incarcerated at Clinton Correctional Facility and previously an inmate at Green Haven Correctional Facility (" Green Haven" ), brings this action pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986. Mr. Amaker alleges that the defendants, all of whom are officials and officers at Green Haven, denied him access to the courts, retaliated against him for having brought administrative grievances and legal actions, denied him appropriate medical treatment, violated his right to receive mail, and discriminated against him on the basis of his race. By Opinion and Order dated February 17, 1999, the defendants' motion to dismiss the original Complaint was granted in part and denied in part. On April 8, 1999 the plaintiff filed an Amended Complaint. The defendants now move to dismiss the Amended Complaint.

I.

On a motion to dismiss, the allegations in the complaint are accepted as true. See Cohen v. Koenig, 25 F.3d 1168, 1172-73 (2d Cir.1994). In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. See Gant v. Wallingford Bd. Of Educ., 69 F.3d 669, 673 (2d Cir.1995); Cosmas v. Hasset, 886 F.2d 8, 11 (2d Cir.1989). The court's function on a motion to dismiss is " not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendant's motion should only be granted if it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir.1994); see also Goldman, 754 F.2d at 1065.

Where a pro se litigant is involved, the same standards for dismissal apply. However, when deciding a motion to dismiss, the Court may consider allegations that are contained in a pro se plaintiff's opposition papers. See Burgess v. Goord, No. 98 Civ.2077, 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) (collecting cases). Moreover, a " court should give the pro se litigant special latitude in responding to a motion to dismiss." Gaston v. Gavin, No. 97 Civ. 1645, 1998 WL 7217, at *1 (S.D.N.Y. Jan. 8, 1998); Adams v. Chief of Security Operations, 966 F.Supp. 210, 211 (S.D.N.Y.1997); Andujar v. McClellan, 95 Civ. 3059, 1996 WL 601522, at *1 (S.D.N.Y. Oct. 21, 1996).

II.

Although the plaintiff's Amended Complaint is less than clear, it can be fairly read to raise the following allegations, which are accepted as true for the purposes of this motion.

On two separate occasions legal papers mailed to the plaintiff from a family member were returned to the sender in violation of the relevant Department of Correctional Services directives. On September 2, 1997, a package of papers relating to a civil action brought by the plaintiff in the Eastern District of New York was returned to the sender. The plaintiff did not receive the papers until a member of his family visited him sometime later. Prior to being returned to the sender, the package was opened and several papers were removed therefrom. Their removal impeded the plaintiff's ability to respond to dispositive motions in the action. (Amended Complaint, ¶¶ IV.1, 2.[FN1])

> FN1. The Amended Complaint is divided into sections. Each section contains numbered paragraphs. The first paragraph in each section is numbered 1, the second

Case 1:07-cv-03383-PAC    Document 10-2    Filed 06/07/2007    Page 7 of 10

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2000 WL 343772 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

paragraph is numbered 2, and so on. Although the respective sections are in general numbered consecutively, with each carrying a Roman numeral, the section entitled " Statement of Facts" is not so numbered. It is obvious, however, that the unnumbered section entitled " Statement of Facts," which falls immediately between " III. Parties" and " V. First Cause of Action," is in fact section IV and each paragraph contained therein will therefore be referred to as a subsection of ¶ IV.

*2 On December 26, 1997 a second package, containing materials related to the action in the Eastern District as well as materials related to an action pending in the New York Court of Claims, was returned to its sender. The package was returned by defendant Correctional Officer McDonnell. As with the first package, certain documents pertaining to the plaintiff's action in the Eastern District were missing when the package was returned to the relative who had sent it. Among the other contents of the returned package was documentary proof of property losses that the plaintiff had sustained. Because he lacked those documents when trial began on January 9, 1998, the amount the plaintiff was able to recover in the Court of Claims action was $800 less than he would otherwise have been entitled to. (*Id.,* ¶¶ IV.3-5.)

On December 6, 1997, defendant Superintendent Artuz directed defendant Deputy Superintendent Schneider to pack the plaintiff's property, including his legal materials, outside of the plaintiff's presence. By depriving the plaintiff of the documents contained in the second package returned to the plaintiff's relative and by packing the plaintiff's legal materials, the defendants, who were allegedly motivated by racial animus, impeded the plaintiff's ability to prepare his case and to submit a necessary motion. The plaintiff eventually lost his action in the Eastern District as a result. The plaintiff alleges that the foregoing acts not only deprived him of access to the courts,[FN2] but were in retaliation for his having filed administrative grievances against defendant Officer Maldonado and having initiated an action in this Court, entitled *Amaker v. Coombe,* No. 96 Civ. 1622, in which some of the defendants are the same as those named here. Defendants Artuz, Schneider, Haponick and Bilden were aware of the interference with the plaintiff's legal materials but failed to prevent it. (*Amended Complaint,* ¶¶ IV.1-6, 8-10, 12-14.)

FN2. The plaintiff also alleges that on June 4, 1996 he attempted to mail an audio tape to the Eastern District of New York but that the tape was never received by the court. The plaintiff alleges that defendant Sergeant Maldonado was obligated to mail the tape and failed to do so, and that defendant Officer Brady fabricated mailing records to indicate that the tape had been sent. (*Amended Complaint,* ¶¶ IV.7-8.) The Amended Complaint, however, does not allege that any adverse consequences resulted from the failure of the tape to arrive.

The defendants, in addition to depriving the plaintiff of legal materials, allegedly retaliated against him in other ways as well. On two occasions the defendant Sergeant Maldonado stole or otherwise misdirected items that had been mailed to the plaintiff. Between April 27, 1998 and June 12, 1998, three false misbehavior reports were filed against the plaintiff, at least two of which were filed at the direction of defendant Deputy Superintendent Schneider. (*Id.,* ¶¶ IV.8, 15-16.)

In April 1998 the defendants asked the plaintiff to withdraw his lawsuit captioned *Amaker v. Coombe* but he refused to do so. On June 12, 1998, the plaintiff was transferred from Green Haven to the Clinton Correctional Facility (" Clinton" ). Clinton is an " industrial" rather medical facility, and while there the plaintiff has not received certain forms of medical treatment that have been recommended by doctors. The plaintiff alleges that the defendants knew of his medical needs, that his transfer from Green Haven to Clinton was intended to deprive him of necessary medical treatment, and that the transfer was in retaliation for his refusal to withdraw a petition for habeas corpus and the *Amaker v. Coombe* lawsuit. (*Id.,* ¶¶ IV.15, X.2; Reply Affidavit of Anthony D. Amaker (" Amaker Aff." ), dated July 26, 1999, ¶¶ 4-5; Addendum to Reply Affidavit of Anthony D. Amaker, dated August 12, 1999, ¶ 8.)

III.

A.

*3 As this Court noted on the defendants' previous motion to dismiss, " [i]n order to plead a violation of the plaintiff's right of access to the courts, the plaintiff must demonstrate that he has suffered, or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03383-PAC    Document 10-2    Filed 06/07/2007    Page 8 of 10

Not Reported in F.Supp.2d                                                                                   Page 3
Not Reported in F.Supp.2d, 2000 WL 343772 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

will suffer, actual injury because of the conduct of prison officials." *Amaker v. Haponik,* No. 98 Civ. 2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999) (citing *Lewis v. Casey,* 518 U.S. 343, 349 (1995)). Thus, the plaintiff must show " that a ' nonfrivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." *Warburton v. Underwood,* 2 F.Supp.2d 306, 312 (W.D.N.Y.1998) (quoting *Lewis,* 518 U.S. at 353); *see also Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997).

Here, the Amended Complaint alleges that specific acts of particular defendants effectively deprived the plaintiff of various legal materials and that such deprivation impeded the plaintiff's ability to successfully pursue two legal actions. In particular, the Amended Complaint alleges that the plaintiff recovered less in the Court of Claims than he would otherwise have been entitled to recover because he was denied documents he needed to establish the full extent of his damages. The Amended Complaint also alleges that the deprivation of documents relating to his case in the Eastern District resulted in that case being dismissed. Thus, at this stage of the litigation, the plaintiff has sufficiently alleged actual injury because of the conduct of prison officials. The defendants' motion to dismiss the plaintiff's denial of access claim is therefore denied.

B.

As this Court previously stated, " [a] prisoner may state a claim for retaliation where he alleges that prison officials retaliated against him in some way because he exercised a constitutional right." *Amaker,* 1999 WL 76798, at *4. Thus, because prisoners, like non-prisoners, have a right of access to the courts and a right to petition the government for the redress of grievances, prison officials may not retaliate against prisoners for exercising those rights. *See Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995); *see also Higgins v. Coombe,* No. 95 Civ. 8696, 1997 WL 328623, at *9 (S.D.N.Y. June 16, 1997).

In this case, the Amended Complaint alleges numerous acts taken by the defendants in supposed retaliation for the plaintiff's pursuit of administrative grievances and legal actions against the defendants and others. In one alleged instance, approximately one month after refusing to withdraw the action captioned *Amaker v. Coombe,* the plaintiff was transferred to a facility where he has allegedly failed to receive proper medical attention. Although " prison officials have broad discretion to transfer prisoners," prisoners may not be transferred " solely in retaliation for the exercise of constitutional rights." *Meriwether v. Coughlin,* 879 F.2d 1037, 1045-46 (2d Cir.1989) (citing *Montanye v. Haymes,* 427 U.S. 236, 243 (1976), *Meachum v. Fano,* 427 U.S. 215, 228 (1976)). *See also Lowrance v. Coughlin,* 862 F.Supp. 1090, 1101 (S.D.N.Y.1994). Here, the alleged timing of the plaintiff's transfer to a supposedly inferior facility is, at this stage in the proceedings, sufficient to state a retaliation claim, especially in light of the additional allegations of interference with the plaintiff's mail and legal material as well as the allegations of false disciplinary charges. The defendants' motion to dismiss the plaintiff's retaliation claim is therefore denied.

C.

*4 " It is well settled that a prisoner's right to receive mail is protected by the First Amendment." *Muhammad v. Pitcher,* 35 F.3d 1081, 1084 (6th Cir.1994) (internal quotation marks and alteration omitted) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). *See also Weiler v. Purkett,* 137 F.3d 1047, 1050 (8th Cir.1998); *cf. Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986). " Censorship of an inmate's mail is justified only if it furthers ' one or more of the substantial governmental interests of security, order, and rehabilitation," ' *Washington,* 782 F.2d at 1139 (quoting *Procunier v. Martinez,* 416 U.S. 396, 413 (1974)), and any " [s]uch interference with prisoners' mail ' must be no greater than is necessary or essential to the protection of the particular governmental interest involved." ' *Id.* (quoting *Procunier,* 416 U.S. at 413).

Here, the Amended Complaint alleges that on four separate occasions the defendants interfered with the plaintiff's receipt of incoming mail in violation of the relevant Department of Correctional Services directives. For example, the Amended Complaint alleges that packages containing legal materials sent to the plaintiff by a relative were returned to the sender twice, and that in each instance certain documents were missing upon the given package's return.[FN3] The defendants make no effort to justify the alleged interference with the plaintiff's mail in terms of a substantial governmental interest. The plaintiff has therefore made sufficient allegations to state a First Amendment claim for interference with his mail, and the defendants' motion to dismiss that claim is accordingly denied.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03383-PAC    Document 10-2    Filed 06/07/2007    Page 9 of 10

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2000 WL 343772 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

FN3. Because the plaintiff alleges that documents were removed from the packages, the defendants cannot successfully argue that the Amended Complaint alleges a mere delay in the plaintiff's receipt of the mailed items.

### D.

The plaintiff alleges that the defendants' interference with his legal materials was motivated by racial animus and deprived him of equal protection. As was true of the allegations of racial bias contained in the plaintiff's original Complaint, the allegations of racial discrimination contained in the Amended Complaint are vague and conclusory, and therefore do not state a claim upon which relief can be granted. See Amaker, 1999 WL 76798, at *4; see also Brown v. City of Oneonta, 106 F.3d 1125, 1133 (2d Cir.1997); Hunt v. Budd, 895 F.Supp. 35, 38 (N.D.N.Y.1995). The plaintiff's equal protection claim is therefore dismissed. However, because the plaintiff may be able to plead facts sufficient to state a claim for a denial of equal protection, the plaintiff's equal protection claim is dismissed without prejudice and with leave to replead.

### E.

The plaintiff alleges that the defendants Haponik, Artuz and Schneider evinced deliberate indifference to the plaintiff's medical needs and thereby caused the plaintiff to suffer physical and emotional pain in violation of the plaintiff's rights under the Eighth Amendment. (*Amended Complaint,* ¶¶ IX.2, X.2.) In particular, the plaintiff alleges that defendants Haponik, Artuz and Schneider transferred the plaintiff from Green Haven to Clinton in order " to deprive plaintiff of adequate treatment from injuries sustain[ed] while under their direct care, custody, and control." (*Id.,* ¶ X.2.)

*5 To establish an Eighth Amendment violation as a result of deliberate indifference to medical needs, " the alleged deprivation must be, in objective terms, ' sufficiently serious" ' and " the charged official must act with a sufficiently culpable state of mind ." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994) (citations omitted). " [A] prison official does not act in a deliberately indifferent manner unless that official ' knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." ' *Id.* (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Moreover, where, as here, a prisoner alleges that he suffered emotional injury while in custody, 42 U.S.C. § 1997e(e) requires that the prisoner also allege physical injury in order to maintain an action for such emotional injury.

In this case, the plaintiff alleges that his " serious medical needs for [a] knee injury[ ] and back injuries were known to the defendants prior to plaintiff's transfer to a non[-]medical facility ." (Amaker Aff., ¶ 4.) The plaintiff further alleges that he is " becoming numbed in many region[s] of the body" as a result of the fact that he has not received allegedly necessary treatment while at Clinton. (*Id.*) The plaintiff also alleges that he is suffering pain to his " neck, hips, back and legs." (*Id.*) He also alleges that he was prescribed pain killers which he was not given, a replacement knee brace which he was not supplied, and physical therapy which he was not provided. (*Id.*) The plaintiff alleges that the defendants knew of his medical needs yet, in retaliation for his refusal to discontinue certain legal actions, intentionally transferred him to a facility where he would not receive adequate treatment for those needs. Reading the plaintiff's allegations liberally, he may also be alleging that he was denied prescribed medical treatment prior to his transfer. (Amended Complaint, ¶ IV.15.) These allegations are sufficient at this point in the litigation to state an Eighth Amendment claim and to plead the actual physical injury required under 42 U.S.C. § 1997e(e). The defendants' motion to dismiss the plaintiff's Eighth Amendment claim is therefore denied.

### F.

The Amended Complaint can, when read in conjunction with the plaintiff's response to the defendants' motion to dismiss, be read to allege a denial of substantive due process. Although the basis of the claim is far from clear, it seems that the plaintiff is claiming that he was denied substantive due process inasmuch as the defendants failed to adhere to established prison policy when they prevented him from receiving legal mail, when they failed to initiate disciplinary proceedings against him in a timely fashion, and when they transferred him to Clinton. *See Amended Complaint,* ¶¶ IV.8, 10, 11, 16, XI.6; Pl. Mem., unpaginated, at 4-6.

*6 It is well established that " if a constitutional claim is covered by a specific constitutional

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." _United States v. Lanier,_ 520 U.S. 259, 272 n.7 (1997). _See also Albright v. Oliver,_ 510 U.S. 266, 272 (1994) (" Where a particular Amendment ' provides an explicit textual source of constitutional protection' against a particular sort of government behavior, ' that Amendment, not the more generalized notion of " substantive due process," must be the guide for analyzing these claims." ' ). Thus, to the extent that the plaintiff's due process claim is directed to the alleged interference with his legal mail and other alleged retaliation for his commencement of legal proceedings, the underlying allegations must be analyzed under the relevant provisions of the First Amendment, _see Franco v. Kelly,_ 854 F.2d 584, 589 (2d Cir.1988), rather than under the Due Process Clause of the Fourteenth Amendment. To the extent that the plaintiff is complaining about the untimely initiation of disciplinary proceedings, the allegations as presented in the Amended Complaint are far too conclusory to state any claim upon which relief could be granted. The plaintiff's due process claim is therefore dismissed.

### IV.

The defendants contend that they are entitled to qualified immunity. Under the doctrine of qualified immunity, " government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." _Harlow v. Fitzgerald,_ 457 U.S. 800, 818 (1982). _See Crawford-El v. Britton,_ 523 U.S. 574, 588 (1998).

As an initial matter, to the extent that it is developed beyond a single conclusory assertion, the defendants' argument for qualified immunity is only directed to the reasonableness of the defendants' actions as they related to the plaintiff's claims regarding the alleged interference with his legal mail. The defendants do not appear to dispute that the rights involved were clearly established, nor do they discuss the reasonableness of their actions except with respect to the alleged infringement of the plaintiff's right to receive legal mail. Yet, no claim raised by the plaintiff rests solely on the alleged intereference with his legal mail: The plaintiff's denial of access claim rests in part on the packing of legal materials already in his possession; the plaintiff's First Amendment claim rests in part on the alleged interference with his personal mail; and, the plaintiff's retaliation claim rests in part on his transfer from Green Haven to Clinton. The Eighth Amendment claim is unrelated to the claim concerning legal mail. Thus, none of the plaintiff's claims can be dismissed on grounds of qualified immunity even if the defendants reasonably believed that their actions concerning the plaintiff's legal mail did not violate a well established right. Moreover, the facts are not sufficiently developed at this stage of the proceedings to conclude that a reasonable officer would not have concluded that the defendants' actions were unlawful even with respect to the alleged interference with the plaintiff's legal mail, particularly in view of allegations that mail was opened and documents were removed before the mail was returned to its sender. A finding of qualified immunity is plainly premature. _See Amaker,_ 1999 WL 76798, at *8..

### CONCLUSION

*7 For the all of the foregoing reasons: 1. The defendants' motion to dismiss the plaintiff's denial of access claim is denied. 2. The defendants' motion to dismiss the plaintiff's retaliation claim is denied. 3. The defendants' motion to dismiss the plaintiff's First Amendment claim is denied. 4. The plaintiff's equal protection claim is dismissed without prejudice and with leave to replead. 5. The defendants' motion to dismiss the plaintiff's claim of deliberate indifference to his medical needs is denied. 6. The plaintiff's due process claim is dismissed.

SO ORDERED.

S.D.N.Y.,2000.
Amaker v. Haponik
Not Reported in F.Supp.2d, 2000 WL 343772 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.